197 So.2d 69

**STATE of Louisiana**

**v.**

**Henry BARBAR and Norman Ruth.**

No. 48380.

March 27, 1967.

Michael S. Ingram, William H. Brown, Baton Rouge, for appellants.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Sargent Pitcher, Jr., Dist. Atty., Ralph L. Roy, Asst. Dist. Atty., for appellee.

HAMITER, Justice.

The defendants, Henry Barbar and Norman Ruth, were convicted of theft of property (a number of bottles of whiskey) of the value of $200, and each was sentenced to serve ten years at hard labor in the state penitentiary. They are appealing.

In order to obtain a reversal of the convictions and sentences defendants rely primarily on two perfected bills of exceptions, one taken to the overruling of certain objections made during the trial and the

other to the denial of their motion for a new trial.

The bills were reserved under the following circumstances: The state produced as a witness one Joseph D. White, in whose possession the stolen property was ultimately found, who testified that he had purchased the whiskey from a Walker Ferguson for $60. The state then called Ferguson who, when questioned by the assistant district attorney, denied that he had delivered any whiskey to White or received any money from him. Whereupon, such attorney informed Ferguson that the state intended to impeach his testimony with a written statement made by him to police officers on a date prior to the trial and out of the presence of the defendants.

Defense counsel objected to the impeachment for the reason the state had not shown that it was actually surprised by the responses of its witness. But after a discussion among all counsel and the court, during which the jury was retired, the court ruled that the assistant district attorney, because he was surprised, could impeach the witness by questioning him about the prior written statement. The jury was then returned, and defense counsel reserved a bill upon the overruling of their objection.

Thereupon, the statement was read in its entirety to Ferguson in the presence of the jury. In it he had purportedly stated, in effect, that on the night following the alleged theft, at the request of the defend-ants, he had found a purchaser for whiskey which they said they wanted to get rid of; that they put the whiskey in his car and he delivered it to White; that White paid him $80 which he delivered to the defendants; and that they had given him $10. Defense counsel again objected urging that the statement "is rank hearsay." The objection was overruled and a bill reserved.

Following the reading of the written statement to Ferguson, in the presence of the jury, the assistant district attorney asked him if he had made it and if the signature thereon was his. He attempted to plead the Fifth Amendment, but was ordered by the court to answer the question. Whereupon, he unequivocally admitted having made the statement. The state then offered it in evidence unrestrictedly as the state's Exhibit 1. Defense counsel objected to its introduction; however, the objection was overruled and the statement admitted. Again, a bill of exceptions was reserved.

All of the above recited objections and exceptions are embodied in the first perfected bill; and the mentioned evidence, as well as the remarks of the court and counsel made in connection with the objections, is attached to the bill.

In the motion for a new trial it was urged (among other things) that it was reversible error for the judge to permit the statement to go to the jury without any instruction or caution by him as to its effect, that is, that it was solely for the purpose of impeaching

Ferguson's testimony and that it could not be used as substantive evidence on which to base a verdict of guilty. Defendants also reiterated therein their objection to the state's impeaching its own witness because of a failure to show surprise. The motion was overruled and the second perfected bill reserved.

█ We shall pretermit the question of whether the state established its surprise at Ferguson's testimony sufficiently to permit it to impeach him. This is done because we are of the opinion that, even if such surprise existed, it was reversible error for the judge to permit the statement to go before the jury without cautioning the latter in any way as to its limited use.

State v. Reed, 49 La.Ann. 704, 21 So. 732, contains the following pronouncement: "When the state proposes to impeach or attack the credibility of one of defendant's witnesses by proof of statements made by him out of court conflicting with those given on the stand, it is the duty of the district attorney to state to the witness what those prior statements were, and when and where made, and inquire of him whether or not he made the same. If the witness acknowledges to have done so, the prior statements so admitted by him to have been made should not be permitted to go to the jury as criminative evidence against the accused. This admission should not carry the prior statements to the jury as 'substantive evidence' against the prisoner, but on the contrary the court should specially and expressly caution the jury from giving to it that effect. * * *"

In State v. Blassengame, 132 La. 250, 61 So. 219, we said: "* * * so far as we can discover from the record, the hearsay testimony of Roscoe, to the effect that Winston had made the statements to him, as indicated in the question propounded to Winston, was permitted to go to the jury as substantive testimony against defendant, with no warning that it was admitted merely for the purpose of impeaching the credibility of Winston.

"* * *

"* * * because of its materiality, it ought not to have been allowed to go to the jury as the hearsay testimony of Roscoe without instructions from the judge that it was admitted merely to prove that Winston had made the statements, but not that they were true, and that they were not to be taken as substantive evidence against defendant. State v. Reed et al., 49 La.Ann. 704, 709, 21 So. 732; State v. Robinson et al., 52 La.Ann. 616, 626, 27 So. 124."

Again relying on State v. Reed, supra, we reversed a conviction in State v. Paul, 203 La. 1033, 14 So.2d 826, observing: "* * * the conviction and sentence would have to be set aside, even if the evidence were admissible, for the reason that the trial court did not specially and expressly caution the jury that the impeaching evidence could not be considered as proof of

the defendant's guilt. * * * In fact, the record indicates that the trial court did not instruct the jury at the time that this evidence was admitted as to what effect should be given it."

In the instant case we find that not only did the judge fail to caution the jury, specially and expressly, that the impeaching evidence should not be considered as proof of defendants' guilt but, rather, he virtually told such body that it should so consider it. Thus, when the assistant district attorney asked the witness, after he admitted making the prior statement, "Were you lying then or now", the judge stated: "Well, it is up to the jury". This was almost identically what occurred in State v. Reed, supra, which conduct we found to constitute reversible error.

■ There is no doubt in this case but that the court's permitting the unsworn, hearsay statement to be read before the jury, as well as its subsequent introduction as criminative evidence against the accuseds, was highly prejudicial to them. Absent its consideration, there was no evidence to connect the defendants with the commission of the alleged offense. In this situation the inference is compelling that the jury (because it had not been instructed otherwise) improperly considered the statement as substantive evidence of the defendants' guilt. Tending to substantiate this conclusion is the following comment contained in the state's supplemental brief filed here: "* * * Thus, the jury had before it all of the circumstances for evaluation *and the State submits correctly gave credence to the witness' [Ferguson's] testimony as contained in the written statement."* (Italics and brackets ours.)

■ The state calls attention to the fact that defense counsel did not request the judge to give the proper instruction when the statement was introduced. We have carefully examined the records of the cases cited above and we find that in none of them was such a request made. Evidently, this court has aligned itself with those jurisdictions which declare that when such evidence is introduced it is incumbent on the judge, *and is his duty,* to especially and expressly instruct the jury as to its limited purpose.

We recognize that there are some jurisdictions which require that counsel request the proper instruction. However, even in some of them it has been said that the better procedure is for the court on its own motion to advise the jury of the restricted use of the evidence and that it should not be considered for any other purpose.

We believe that, in the absence of specific statutory authority to the contrary, this court should continue to follow the precedent already set down by its previous decisions. When an attempt is made to impeach a witness by the introduction of prior inconsistent statements the judge

knows at once the limited purpose for which such evidence can be accepted. And it should be incumbent on him, and his duty, to so advise the jury without leaving it to the probability that, being laymen and not informed as to the niceties of the law, the members thereof will give it improper application.

The danger of such a probability is clearly recognized by this court in State v. Willis, 241 La. 796, 131 So.2d. 792, wherein we observed that the judge should instruct the jury as to the limited effect of impeachment evidence at the time it is admitted, and should not wait to include it later in his general instructions when such body would have to apply the instruction in retrospection. Moreover, we also said therein: "It is a legal principle, well recognized in our jurisprudence, that, when impeaching evidence is received, it becomes the duty of the judge to caution the jury that such evidence should not be considered as proof of defendant's guilt. State v. Reed, 49 La.Ann. 704, 21 So. 732; State v. Paul, 203 La. 1033, 14 So.2d 826 and State v. Rocco, 222 La. 177, 62 So.2d 265." (It so happened that in the Willis case there was a request of the judge for the special instruction. But the matter of its necessity was not an issue.)

For the reasons assigned the convictions and sentences herein are reversed and set aside and the case is remanded for a new trial.